Cocks and others *v.* Steamer Tonawanda and Steam-Tug Pawtucket.

*(District Court, D. Rhode Island.* ——, 1880.)

COLLISION—NEGLIGENCE.

In Admiralty. Libel in case of collision.

*W. W. & S. T. Douglas,* for libellants.

*Thurston, Ripley & Co.,* for steam-tug Pawtucket.

*Browne & Van Slyck,* for steamer Tonawanda.

KNOWLES, D. J. Within the hour following sunset on the twenty-fifth of October, 1876, the steamer Tonawanda left her dock, north-easterly from Fox Point wharf and 630 feet therefrom, for Philadelphia; and the steam-tug Pawtucket,

with the schooner Harriet E. Brown in tow, left the Wilkes-barre pier, situate south-easterly from Fox Point and 1,536 feet distant therefrom in a direct line, bound for the wharf of Tucker & Swan, situate at a point north-westward of said pier, on the westerly side of Providence river.

The course of the steamer was down the channel southerly; that of the tug and tow westerly and northerly across the channel. The schooner was securely attached to the tug, starboard to starboard—the schooner heading easterly, the tug westerly; the tug, as it seems, wholly hidden from view from a northerly stand-point. The schooner, it is not questioned, before leaving the pier came under the control and manage-ment, solely and exclusively, of the captain of the tug; the captain of the schooner, though on board her, devolving for the trip all his duties and responsibilities upon the captain and officers of the tug. The schooner and tug (regarding them attached to each other as one steam-vessel) started on her course, and the steamer Tonawanda on hers, and it so chanced that the two came into collision at a point near the westerly line of the channel of Providence river, distant about 1,600 feet in a direct line from the dock of the steamer, and about 1,100 feet in a direct line from the aforesaid pier. For the damage occasioned by this collision the owners of the schooner, and of her freight, instituted suit by libel against both the steamer and the tug, charging that each and both of them were, upon the facts, guilty of sins of commission or of omission, or of both, which rendered them both liable for damage as claimed. The libel was filed November 8, 1876, and the claims and answers of the steamer and of the steam-tug, November 24, 1876, and December 11, 1876; but, for one reason or another, the cause was not pressed to a hear-ing until October 27, 1879, and a noteworthy fact is that a great part of the testimony adduced in depositions was not taken until 1878 and the summer of 1879.

At the hearing it was contended, on behalf of the libel-lants, that their allegations of non-feasance and misfeasance against the steamer and the tug, respectively, were fully sus-tained by evidence and argument, while on the part of the

steamer and the tug respectively, the contrary was maintained—the learned and faithful proctors of the claimant tug charging that the steamer was solely in fault and the tug guiltless, and the no less learned and faithful proctor of the claimant steamer charging that the tug was solely in fault and the steamer guiltless. That one or the other of the two claimants (the tug and tow being regarded as one, and the tug as the one for the purposes of this cause) was to be held responsible for the collision, was understood in effect to be conceded by the claimants themselves in their elaborate and voluminous briefs, and their no less elaborate oral statements and arguments; and upon the issues thus presented the court is now required to announce its *conclusions*. Its conclusions I emphasize, for these alone does it seem to me necessary or expedient here to set forth. An opinion with reasons, I am aware, is always a desideration on the part of the prevailing party, but rarely on the part of his opponent, if the cause is to be retried on appeal, as the case at bar may be. In fact, a statement in full of the process of reasoning upon the facts and evidence which underlie those conclusions would little benefit or interest any party, as it would be necessarily but a review and repetition of arguments, suggestions, and recitals, substantially, if not literally, embodied in the briefs and oral arguments of counsel at the hearing.

1. The charges of culpable fault against the Tonawanda preferred by the libellants, and earnestly pressed by the counsel of the steam-tug, are six in number, namely: *First*, in starting down the narrow and frequented channel of Providence river under a full head of steam; *second*, in not having a bow watchman on duty; *third*, in not observing ordinary diligence and circumspection, but allowing a person 50 or 100 feet further aft than were the captain and mate, and not on duty, to anticipate those officers; *fourth*, in not heeding or answering the proper signals made by the Pawtucket; *fifth*, in not immediately signalling to stop the steamer instead of merely signalling to slow her; *sixth*, in porting the helm instead of starboarding, or at least letting her go in the course she was then on.

The first four of these I adjudge satisfactorily sustained by the weight of the evidence. That the steamer was in fault, after the approach of the tug and tow was noticed by the mate and captain of the Tonawanda, is not shown. The fifth and sixth charges, therefore, I adjudge not sustained. The evidence bearing upon the question, how light or how dark it was during the five or ten minutes preceding the collision, was very voluminous, very contradictory, and utterly irreconcilable. It in my judgment, however, warrants the conclusion that, at the moment of leaving Fox Point wharf, the Tonawanda's lookout, had such an officer been at his post, could have seen the tug and schooner, as the persons on board the tug and schooner saw the Tonawanda. That the collision was in any very appreciable degree caused or affected by the absence of light, though the sun had set, I find not to be sustained by the weight of evidence.

2. The charges of culpable negligence against the steam-tug, urged by the libellants, and by the counsel for the Tonawanda, were in effect these, viz.: *First*, that as the Tonawanda was seen by the captains of the tug and schooner under way near Fox Point, at the minute the tug started out, or before, the tug, towing a schooner stern first, should have delayed starting out until the Tonawanda had passed down the channel; *second*, the tug and tow, having started out, should have ported her helm and passed up on the eastern side of the channel, leaving the western side open to the Tonawanda, on the course she was seen to be coming down; *third*, granting that whistles were blown by her, as she claims, that when she failed to receive any response to her signals she should have either ported her helm, or slowed or stopped her engine, and given way to the steamer; and, *fourth*, that as the sun had set the tug and tow each should have had lights, as prescribed by statute, and a bow watchman each, the admitted fact being that neither tow nor tug had either lights or watchman.

As regards the omission by tug and tow to exhibit lights, I have only to say that I fail to find reason, on the evidence, for adjudging that their short-coming in this respect contrib-

uted in any appreciable degree to occasion or aggravate the collision. The absence of a watchman on the tow was, however, in my judgment, a culpable omission, inasmuch as it appears that the captain of the tug, who was directing her course, was not in a position to see continuously the approaching steamer, as a watchman on board the tow could have been.

Subject to these qualifying remarks as to the fourth specification, I am constrained by the weight of evidence to adjudge that these charges are sustained. It is conceded that in the testimony is found *data* for a plausible argument against my conclusions; but the weight of the argument, as well as the weight of evidence, in my judgment, sustain them.

In regard to one point persistently and confidently urged as a pivotal one on behalf of the tug-boat, it may be well here to append a remark or two.

It was contended that the evidence (including certain plats exhibited, and certain statements of distances, and estimates of the speed of the tug-boat and steamer, respectively) established as an incontrovertible fact that, at the moment the officers of the steamer first saw the tug and tow, the tug and tow had reached a point in the westerly part of the channel of the river out of the course—that is, out of the way of the steamer—and that consequently, if the steamer had kept on her course, and had not veered from it by porting her helm, no collision could or would have occurred. This point, I would remark, has received due consideration, and the conflicting testimony bearing upon it been canvassed and weighed; the conclusion arrived at being, as above substantially stated, that the point is not sustained by the weight of evidence.

It results that I must pronounce for the libellants as against both the steamer and the tug, as being both culpably in fault and liable for the damage occasioned by the collision. As to the amount of the damage, it must be referred to a commissioner to inquire and report, unless the parties can agree thereon.